1

2

3

4

5

6

7

8

9

10

11

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

12   IGNACIO MEDRANO-SANCHEZ,    )    1:07-CV-0816 OWW  WMW HC
    )
13    Petitioner,    )    FINDINGS AND
    )    RECOMMENDATIONS RE
14    vs.    )    MOTION TO DISMISS
    )    PETITION FOR WRIT OF
15    )    HABEAS CORPUS
    )
16   DENNIS SMITH, Warden,    )
    )    [Doc. 4]
17    Respondent.    )
    )
18    _____  )

19

20

21         Petitioner is a federal prisoner proceeding pro se on a petition for writ of habeas

22   corpus pursuant to 28 U.S.C. Section 2241. Pending before the court is Respondent's motion

23   to dismiss.  Petitioner has not opposed the motion.

24                     **BACKGROUND**

25         Petitioner is currently in custody of the Bureau of Prisons ("BOP") at Atwater,

26   California pursuant to a judgment of the United States District Court for the Eastern District

27   of California.  On June 4, 2007, Petitioner filed the instant federal petition for writ of habeas

28   corpus in this Court.  Petitioner claims the BOP is unlawfully denying him consideration for

placement into a Residential Re-entry Center ("RRC").

**DISCUSSION**

A.      Standard of Review

Writ of habeas corpus relief extends to a person in custody under the authority of the

United States.  See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal

prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2241(c)(3).  Petitioner's claims are proper under 28 U.S.C. §

2241 and not 28 U.S.C. § 2255 because they concern the manner, location, or conditions of

the execution of petitioner's sentence and not the fact of petitioner's conviction or sentence.

Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.1990) (stating that a challenge to the execution

of a sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C.

§ 2241"); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir.1998) (*per curiam*)

(allowing a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

Further, Petitioner is challenging the execution of his sentence at Atwater which is

within the Fresno Division of the Eastern District of California; therefore, the Court has

jurisdiction over this petition. See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

B.      BOP Regulations Contradict United States Code Statutes

As previously stated, Petitioner contends that BOP regulations which prevent him

from being considering for release to RRC until after he has served nine-tenths of his

sentence violate Title 18, Section 3621(b), of the United States Code. See Petition at 1-2.

Title 18, of the United States Code, Section 3621(b) states:

> (b)  Place of imprisonment - - The Bureau of Prisons shall designate the place of the
> prisoner's imprisonment.  The Bureau may designate any available penal or
> correctional facility that meets minimum standards of health and habitability
> established by the Bureau, whether maintained by the Federal Government or
> otherwise and whether within or without the judicial district in which the person was
> convicted, that the Bureau determines to be appropriate and suitable, considering --
>     (1) the resources of the facility contemplated;
>     (2) the nature and circumstances of the offense;
>     (3) the history and characteristics of the prisoner;

1     (4) any statement by the court that imposed the sentence - -
      (A) concerning the purposes for which the sentence to imprisonment was

2    determined to be warranted; or
      (B) recommending a type of penal or correctional facility as appropriate;

3 and

     (5) any pertinent policy statement issued by the Sentencing Commission

4    pursuant to section 994(a)(2) of title 28.

5     In designating the place of imprisonment or making transfers under this
    subsection,

6 there shall be no favoritism given to prisoners of high social or economic status.  The
 Bureau may at any time, having regard for the same matters, direct the transfer of a

7 prisoner from one penal or correctional facility to another.  The Bureau shall make
 available appropriate substance abuse treatment for each prisoner the Bureau

8 determines has a treatable condition of substance addiction or abuse.

9 Section 3624(c) states:

10     (c) Pre-release custody - - the Bureau of Prisons shall, to the extent
    practicable, assure

11 that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed
 six months, of the last 10 per centum of the term to be served under conditions that

12 will afford the prisoner a reasonable opportunity to adjust to and prepare for the
 prisoner's re-entry into the community.  The authority provided by this subsection

13 may be used to place a prisoner in home confinement.  The United States Probation
 System shall, to the extent practicable, offer assistance to a prisoner during such

14 pre-release custody.

15 The relevant BOP regulations state the following:

16     (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise
    of

17 discretion for designating inmates to community confinement.  The Bureau designates
 inmates to community confinement only as part of pre-release custody and

18 programming which will afford the prisoner a reasonable opportunity to adjust to and
 prepare for re-entry into the community.

19
 See 28 C.F.R. § 570.20(a).

20
 Section 570.21 states:

21
     (a) The Bureau will designate inmates to community confinement only as part

22    of
 pre-release custody and programming, during the last ten percent of the prison

23 sentence being served, not to exceed six months.

24     (b) We may exceed these time-frames only when specific Bureau programs
 allow

25 greater periods of community confinement, as provided by separate statutory authority
 (for example, residential substance abuse treatment program (18 U.S.C.

26 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

27

28            3

1    Prior to December 13, 2002, the BOP would occasionally allow prisoners to serve all

2    or part of their imprisonment in an RRC.[1] Then, on December 13, 2002, the Office of Legal

3    Counsel of the Department of Justice ("OLC") issued a legal opinion interpreting the

4    interplay between §§ 3621(b) and 3624(c) of Title 18. The opinion held that § 3621(b) did

5    not authorize the BOP to place an inmate in an RRC for the entire term of his sentence

6    because community confinement did not constitute imprisonment. Id. The BOP consequently

7    changed its procedure and limited RRC placements for prisoners to the final 10% of their

8    sentences or six months, whichever was shorter.

9    However, in 2004, two Circuit Court of Appeals held that the 2002 BOP policy

10    change was unlawful given that the plain language of § 3621(b) gave the BOP discretion to

11    transfer an inmate to an RRC at *any time*. Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004);

12    Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004). In light of the opinions of Elwood and

13    Goldings, on August 18, 2004, the BOP proposed new regulations "announcing its

14    categorical exercise of discretion for designating inmates to community confinement when

15    serving terms of imprisonment." 69 Fed. Reg. 51, 213 (Aug. 18, 2004). Although the 2005

16    regulations acknowledged the BOP's general discretion to place an inmate at an RRC at any

17    time, it limited such placement to the lesser of 10% of a prisoner's total sentence or six

18    months, absent application of special statutory circumstances. 28 C.F.R. §§ 570.20, 570.21.

19    The final rules were published on January 10, 2005, and became effective on February 14,

20    2005.

21    The question to be resolved here is whether the BOP's 2005 regulations are contrary

22    to, or a permissible construction of, Section 3621(b).

23

24

25    [1]The Court hereby takes judicial notice of Arcediano v. Wrigley, Case No. 1:06-CV-00780 AWI DLB HC. This Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v.

26    Borneo, Inc., 971 F.2d 244 (9th Cir.1992); see also MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th cir. 1980) Arcediano is factually congruent with the instant case.

27    Therefore, the Court's opinion in this case will be derived from the record developed in Arcediano.

28    4

1    Three Circuit Court of Appeals and several District Courts, including this Court, have

2    found the 2005 regulations to be contrary to Section 3621(b). Woodall v. Federal Bureau of

3    Prisons, 432 F.3d 235, (3rd Cir. 2005); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Levine

4    v. Apker, 455 F.3d 71 (2d Cir. 2006); Horn v. Ellis, No. 06 CV-F-0006 OWW TAG HC;

5    2006 WL 1071959 (E.D. Cal. April 21, 2006); Baker v. Willingham, No. 3:04cv1923, 2005

6    WL 2276040 (D.Conn. Sept. 16, 2005); Wiederhorn v. Gonzales, No. 05-360-TC, 2005 WL

7    1113833 (D.Or. May 9, 2005); United States v. Paige, 369 F.Supp.2d 1257 (D. Mont. 2005);

8    Drew v. Menifee, No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005); Pimentel v.

9    Gonzales, 367 F.Supp.2d 365 (E.D.N.Y. 2005); Cook v. Gonzales, No. 05-09-AS, 2005 WL

10    773956 (D.Or. Apr. 5, 2005); Crowley v. Fed. Bureau of Prisons, 312 F.Supp.2d 453

11    (S.D.N.Y. 2004).  The Ninth Circuit Court of Appeals has not addressed the issue.

12    In reviewing an agency's construction of a statute, courts apply the test set forth in

13    Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  The

14    Court looks first to the text of the statute to determine whether Congress has spoken directly

15    on the issue. Contract Management, Inc. v. Rumsfeld, 434 F.3d 1145, 1146-47 & n.2 (9th Cir.

16    2006).  If the intent of Congress is clear from the text of the statute, that is the end of the

17    inquiry, the Court must follow the expressed intent of Congress. Id. at 1146-47, citing

18    Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct.

19    2778, 81 L.Ed.2d 694 (1984). If, however, the statute is silent or ambiguous on the specific

20    issue, the Court must determine whether the agency's interpretation is based on a permissible

21    construction of the statute. Id. at 1147. If so, the Court defers to the agency's determination.

22    Id.

23    As found by the Second, Third, and Eighth Circuit Court of Appeals, this Court finds

24    that the plain text of the statute, as well as the legislative history do not support the BOP's

25    regulations to limit RRC placement to only those inmates serving the last 10% of their

26    sentence. As stated in § 3624(c), Congress's intent to release prisoners to an RRC is to

27

28    5

1  facilitate their re-entry into the community.  Congress has unambiguously set forth five

2  factors for the BOP to consider when making its determination to release a prisoner.  18

3  U.S.C. § 3621(b).  Specifically, Section 3621(b) distinguishes between the BOP's duty to

4  designate a place of imprisonment ("shall designate") and its broad discretion in determining

5  the specific place of imprisonment ("may designate any available penal or correctional

6  facility").  Levine, 455 F.3d at 80.  The statute not only provides discretion to the BOP for

7  placement, but provides a specific list of five factors the BOP must consider prior to

8  placement. Id. Given the clear text of the statute and Congress's unequivocal intent for the

9  BOP to consider all five factors, the current BOP regulation is invalid because "these factors

10 cannot be fully considered because the amount of time an inmate may spend in a CCC is

11 categorically limited to the lesser of six months or ten percent of a sentence without regard to

12 individualized circumstances."  Woodall, 432 F.3d 235, 245; Levine, 455 F.3d at 80-82;

13 Fults, 442 F.3d at 1091.  Further, the legislative history supports the finding that

14 consideration of the five factors are mandatory, although non-exclusive.  As set forth in

15 Levine v. Apker, 455 F.3d 71, the Second Circuit stated:

16        Accompanying § 3621(b), the Senate Judiciary Committee issued a report
         speaking directly to the nature of the statutory factors. . . . The report stated
17       that '[i]n determining the availability or suitability of the facility selected, the
         Bureau [is] specifically required to consider such factors as [those listed in §
18       3621(b)],' and that '[a]fter considering these factors,' the BOP may designate
         a place of imprisonment or enact an inmate transfer.  S.Rep. No. 98-225
19       (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25; *see also Woodall*, 432
         F.3d at 245-46 (quoting same).  The report disavows any restriction on the
20       BOP's exercise of discretion, but rather states that it 'intends simply to set
         forth the appropriate factors that the Bureau should consider in making the
21       designations.'  Id.  By 'specifically requir[ing]' the BOP to consider the listed
         factors before it makes placements and expressing intent to 'set forth the
22       appropriate factors' to be considered, the report underscores what the textual
         language itself makes clear: that the enumerated factors are mandatory.
23       (footnote omitted).

24 Levine, at 82.

25        Thus, although the BOP has discretion to refuse to place an inmate in a correctional

26 facility, the exercise of discretion must be based at least in part on the specific factors

27 outlined in § 3621(b), and the BOP regulations set forth in §§ 570.20 and 570.21 simply

28                                          6

1    ignore those factors.  As such, the regulations contradict, rather than interpret, § 3621(b), and

2    no deference is owed.

3
     In Arcediano, Respondent argued that the language of § 3624(c) states
4
     "unambiguously that prisoners have no right to be considered for an RRC placement until
5
     they have finished 90% of their sentence." See Arcediano v. Wrigley, Case No. 1:06-CV-
6
     00780 AWI DLB HC. However, Respondent fails to recognize that by creating a blanket rule
7
     against transfer until the inmate has served 10% of his sentence, the BOP has failed to
8
     consider the mandatory factors set forth in § 3621(b).  Woodall, 432 F.3d at 250.  As stated in
9
     Woodall, "§ 3624 does not determine when the BOP should *consider* CCC placement, but
10
     when it must *provide* it."  Id. (Emphasis in original.)  "The statute requires the BOP not just
11
     to consider, but to actually *place* an inmate in a CCC or like facility, during the last ten
12
     percent or six months of the sentence, when that is possible."  Id. (Emphasis in original.)
13

14   Three of the five factors set forth in § 3621(b)- the nature and circumstances of a prisoner's

15   offense, the history and characteristics of the prisoner, and any statement by the court that

16   imposed the sentence, require specific analysis to each individual prisoner. Levine, 455 F.3d

17   at 86; Woodall, 432 F.3d at 247; Fults, 442 F.3d at 1091. Yet, under the 2005 regulations,

18   these considerations cannot be fully considered.  As illustrated by the Court in Woodall,

19   which stated:

20
         Worthy of special mention is the recommendation of the sentencing judge.  United
21       States District Judges take their sentencing responsibilities very seriously and are
         familiar with the various BOP institutions and programs.  Their recommendations as
22       to the execution of sentences are carefully thought out and are important to them.  The
         significance of this aspect of the sentencing process is highlighted by the
23       acknowledgment of the regional counsel of the BOP at oral argument that the BOP
         follows judicial recommendations in approximately 85-90 percent of all cases.  Here,
24       however, the requirement that the BOP consider a sentencing judge's
         recommendation cannot be satisfied without an individualized, case-by-case inquiry
25       that is impossible under the regulations.

26

27

28                                                    7

1  Woodall, 432 F.3d at 247.  In Woodall, the Court recognized that the sentencing court had

2  recommended the petitioner spend six months at a halfway house placement, but under the

3  current regulations, that recommendation could not be fully considered. Id. at 248.  "In fact,

4  *no* recommendation of a CCC placement exceeding six months or ten percent of a sentence

5  can be considered." Id. Although the BOP can consider the amount of time the prisoner has

6  actually served in making placements, that factor cannot be the single consideration, which is

7  precisely what the 2005 regulations have done.

8
        In Arcediano, Respondent alleged his view is supported by the Ninth Circuit's

9  decision in United States v. Latimer, 991 F.2d 1509, 1514-15 (9th Cir. 1993).  In Latimer, the

10 Ninth Circuit held that the language of the Sentencing Guidelines, specifically section

11 4A1.2(e)(1), did not define incarceration to include detention solely in a community

12 treatment center or halfway house.  Latimer, 991 F.2d at 1514.  Respondent argued that the

13 Office of Legal Counsel's December 13, 2002, opinion used similar reasoning in determining

14 that the guidelines did not permit the BOP to substitute confinement in an RRC for a term of

15 imprisonment.  In Arcediano, this Court did not find Respondent's argument persuasive. As

16 Respondent acknowledged, the case does not involve a prisoner who was directly placed into

17 an RRC at the outset of his sentence.  Thus, this Court determined it need not reach

18 Respondent's argument.

19
20        Respondent further argued that the case is similar to Lopez v. Davis, 531 U.S. 230

21 (2001), which addressed § 3621(e)(2)(B), a different subsection.  In Lopez, the Supreme

22 Court analyzed and upheld a BOP regulation that categorically denied early release to certain

23 inmates after completion of a drug rehabilitation program, who would have otherwise been

24 released under the terms of the statute.  Lopez, 531 U.S. at 238.  The statute at issue there, 18

25 U.S.C. § 3621(e)(2)(B), stated that the BOP may reduce the prison term of an inmate who

26 was convicted of a "nonviolent offense" and had successfully completed a substance abuse

27 program. Id. at 232.  The BOP's regulation interpreting that statute categorically denied early

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

release to prisoners who had been convicted of a felony involving "the carrying, possession, or use of a firearm."  Id., quoting 28 C.F.R. § 550.58(a)(1)(vi)(B)).  The Supreme Court held that the BOP had properly exercised its discretion by furthering Congress's intent to exclude certain violent inmates from consideration for pre-release. Id.        Respondent reasoned that "[j]ust as § 3621(e)(2)(B) vests broad discretion in the BOP to determine which individuals are candidates for early release, so too § 3621(b) gives the BOP broad discretion in deciding where to designate inmates.  The BOP's decision to restrict RRC placements to prisoners serving the last 10% of their sentences is a categorical expression of the BOP's discretion that does not differ fundamentally from the BOP's exercise of the same discretion under § 3621(e)(2)(B)."  See Arcediano, 1:06-CV-00780 AWI DLB HC.  The BOP undoubtedly may exercise discretion under § 3621(b), however, it is not free to disregard the specific factors set forth by Congress when doing so.  Although Respondent argued that "the categorical exercise of discretion in Lopez used factors such as sentencing enhancements which were not determinative of being 'violent' under some circuits" and therefore broadened the definition, this argument overlooks the fact that the statute at issue there did not specifically include a set of factors to be considered by the BOP in making its determination of whether an offense could be classified as "violent."   In Lopez, the BOP had simply filled in a statutory gap, whereas here, no such claim can be made because the BOP has specifically excluded from consideration the very factors that Congress outlined for consideration.

Based on the foregoing, the Court finds that the BOP regulations contradict, rather than interpret, Congress's intent in enacting 18 U.S.C. §§ 3621(b) and 3624(c).

In his motion to dismiss, Respondent acknowledges this court's many prior rulings on this issue, but argues that in this case, the petition is premature.  Respondent explains that Petitioner is not due to be released until May 2, 2012, even if he is given credit for all possible good time.  Respondent argues that this petition is therefore premature, and should

9

1   be dismissed without prejudice to renewal at a time closer to Petitioner's release date.

2

3       The petition in this case also challenges another Bureau of Prisons regulation about

4   RRC placements, Program Statement 7310.04, Community Correction Center (CCC)

5   Utilization and Transfer Procedure. The Program Statement sets forth procedures for

6   placement of prisoners in RRC's by the BOP. ( Id.). That document provides that, "Normally

7   11 to 13 months before each inmate's probable release date, the unit team shall decide

8   whether to refer an inmate to a Community Corrections program."  Respondent argues that

9   under the Program Statement the BOP is not legally required to evaluate Petitioner for

10  placement in an RRC until eleven to thirteen months before his release date.  Thus,

11  Respondent concludes that this issue is not ripe.

12      The ripeness doctrine serves "to prevent the courts, through avoidance of premature

13  adjudication, from entangling themselves in abstract disagreements over administrative

14  policies, and also to protect the agencies from judicial interference until an administrative

15  decision has been formalized and its effects felt in a concrete way by the challenging parties.

16  Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681

17  (1967). The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show

18  either a specific present objective harm or the threat of specific future harm. Laird v. Tatum,

19  408 U.S. 1, 14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). "A claim is not ripe for adjudication if

20  it rests upon contingent future events that may not occur as anticipated, or indeed may not

21  occur at all." Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406

22  (1998) (internal citations omitted).

23      This court  agrees with Respondent that Petitioner's claim is not ripe and that,

24  therefore, he presently lacks standing under Article III. Even assuming, arguendo, that the

25  petition properly challenged the validity of the Program Statement, that regulation does not,

26  as Petitioner has suggested, improperly limit the discretion of BOP to make an RRC

27

28                                          10

placement in any individual case. Rather, the regulation only requires that BOP make an RRC

placement assessment at least eleven to thirteen months prior to the inmate's release date.

Nothing in the Program Statement prevents the BOP, in the exercise of its statutory

discretion, from making an earlier determination, although the Court is not aware of any

statute or regulation that requires such expedited action by the BOP. In other words, the

Program Statement simply insures that inmates will receive an RRC assessment sufficiently

in advance of their release date to permit them to make appropriate plans prior to their

transfer. Because the Program Statement does not limit or otherwise intrude on the BOP's

exercise of discretion in making its RRC assessment, the Program Statement, contrary to

Petitioner's assertions, is not in any way analogous to the 2002 and 2005 regulations that

many courts, including this one, have found to be an illegal limitation on the discretion

vested in the BOP by § 3621(b).

Because Petitioner's release date is May 2, 2012, the Program Statement does not

require that the assessment team meet to consider Petitioner's RRC placement until June

2011, approximately three years from now. Because Petitioner is not presently entitled to an

RRC assessment under the applicable BOP regulation, he cannot show either a specific

present objective harm or the threat of specific future harm. Moreover, even Petitioner's

release date is only tentative at this point; events could transpire between now and May 2,

2012, that would result in the postponement of Petitioner's release date to a more distant

point in time. For this reason, Petitioner's claim of a right to an immediate assessment rests

"upon contingent future events that may not occur as anticipated, or indeed may not occur at

all." Texas v. United States, 523 U.S. at 300. Thus, the claim is not ripe, and Petitioner lacks

standing to pursue the claim at this time.

Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

1) that Respondent's motion to dismiss be GRANTED;

11

2) that this petition for writ of habeas corpus be DISMISSED without prejudice;

3) that the Clerk of the Court be directed to enter judgment for Respondent and to close this case.

These Findings and Recommendations are submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **May 30, 2008**                              /s/  **William M. Wunderlich**

                                                  UNITED STATES MAGISTRATE JUDGE